[Cite as *In re Khourie*, 2011-Ohio-7074.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: DANIEL KHOURIE

DANIEL KHOURIE

LISA KHOURIE

      Applicants

Case No. V2011-60085

Commissioners:
Karl C. Kerschner, Presiding
William L. Byers IV
Necol Russell-Washington

ORDER OF A THREE-
COMMISSIONER PANEL

{¶1} On July 21, 2010, the applicant, Lisa Khourie, filed a compensation application on behalf of her son, Daniel Khourie, as the result of an assault which occurred on February 13, 2010. On November 18, 2010, the Attorney General issued a finding of fact and decision determining that the applicant had met the necessary jurisdictional requirements to qualify her son as a victim of criminally injurious conduct and she was granted an award of reparations in the amount of $4,412.87, of which $741.90 represented payment of dental expenses incurred for services rendered to the victim and $3,670.97, represented reimbursement to the applicant for medical expenses, prescription expenses, and mileage incurred for the benefit of the victim. The applicant's requests for reimbursement of food items purchased for the victim due to the broken jaw he sustained as a result of the assault were denied since the Attorney General determined this was not a compensable expense under the program.

{¶2} On November 30, 2010, the applicant submitted a request for reconsideration. On January 26, 2011, the Attorney General rendered a Final Decision. The applicant

was granted an additional award in the amount of $17.32, which represented reimbursement of applicant's purchase of over-the-counter medications for the victim. However, the Attorney General again denied the applicant's request for food items purchased for the victim.   The Attorney General stated in pertinent part:

    a.    "However, the law does not allow compensation for basic living expenses [R.C. 2743.51(E) and (F)(1)] *In re Segebart* (1989), 61 Ohio Misc. 2d 428.   Additionally, the court has held that Ensure is not an allowable expense when due to victim's jaw being wired shut the Ensure replaced the victim's normal meal.   The applicants' did not incur any additional cost than what they normally would have spent had they purchased regular food items.   *In re Gilmore*, V02-59550tc (1-29-04)."

{¶3} On January 28, 2011, the applicant filed a notice of appeal from the January 26, 2011 Final Decision of the Attorney General.   Hence, a hearing was held before this panel of commissioners on June 15, 2011 at 12:00 P.M.

{¶4} The applicant's attorney, Michael Falleur, appeared at the hearing, while Assistant Attorney General Renata Staff represented the state of Ohio.

{¶5} The applicant stated the only issue in this case is whether the applicant was reasonable in incurring expenses for the victim's liquid diet and nutritional supplements, rather than using a previously purchased meal plan, since the victim was a freshman at The Ohio State University at the time of the criminal incident.   The applicant withdrew the request for reimbursement for juices and soups purchased for the victim, since the victim could have used his meal plan card to make such purchases.   The applicant seeks reimbursement for approximately $260.00 which was incurred to purchase nutritional supplements.   The applicant conceded that if she had been aware that nutritional supplements were available under the meal plan that course would have been taken, however, she was unaware of this possibility at the time of her son's injury. Furthermore, there was a question whether there would have been sufficient money on the meal plan to purchase both the liquid diet foods and the nutritional supplements.

{¶**6**} The Attorney General asserts this panel should follow the previous holding in *In re Gilmore*, V02-59550tc (1-29-04), wherein a panel of commissioners determined the purchase of Ensure was not a compensable expense since this compared to an expense a person would normally incur for regular living expenses. Accordingly, the Final Decision should be affirmed.

{¶**7**} The applicants' rested their case and the Attorney General called The Ohio State University Executive Chef, Mark Newton, to testify via telephone. Mr. Newton testified that liquid meals would have to be requested through dining services and the cost of these meals would be covered by the meal plan. (A meal plan at OSU would require a student to receive a card. The card would contain a number of "swipes" consistent with the type of meal plan purchased. Each swipe would be the equivalent of a full meal). By request, a student could be provided with a nutritional supplement, i.e., Ensure, Boost, Special K Shakes, etc. The request could be made at their regular dining facility or with the central office of food services.

{¶**8**} Upon cross-examination, Mr. Newton revealed that the cost of any average "swipe" on a meal plan ranges between $7.50 and $7.75. Mr. Newton testified that Ensure would constitute a complete meal. He conceded that if a doctor prescribed a liquid meal plus Ensure such would constitute two meals, or two "swipes." Ensure and Boost would have to be requested by the student from dining services. Mr. Newton admitted that there was a disconnect between OSU Dining Services and OSU Resident Housing, in providing students with information concerning dining options available to students.

{¶**9**} On redirect examination, Mr. Newton testified that a student would have to contact him to have a liquid diet provided, however, residential hall or dining facilities individuals could be initially contacted and they would put the student in touch with Mr. Newton. Whereupon, Mr. Newton's testimony was concluded.

{¶**10**} In closing, the applicant argued that *In re Gilmore* did not overrule prior court holdings *In re Casto*, V2002-52016tc (5-13-03) and *In re Piscioneri*, V2002-50277jud

(1-9-03).   *Gilmore* dealt with the applicant failing to meet his burden to prove an additional expense had been incurred for the purchase of nutritional supplements.   In the case at bar, applicant contends a liquid meal plus a nutritional supplemental would have been double the cost.   Furthermore, the victim contends he acted reasonably, but due to miscommunication or a disconnect, he never reached dining services to learn about the availability of a liquid diet meal or nutritional supplements.   Finally, because it was recommended he eat both a liquid meal and a nutritional supplement he incurred additional allowable expense.

{¶11} In closing the Attorney General urges this panel to follow the holding of *Gilmore*, finding Ensure was a daily living expense which could not be compensated from the program.   The Attorney General focused on a the letter dated May 26, 2011, written by Pamela C. Fields, Administrator, for the office of Jeffrey W. Krause, D.D.S..   The Attorney General contends that although the letter, not written by a medical professional, recommends that the victim consume Ensure, Boost, and Carnation instant breakfast these are meal replacement products that are eaten in lieu of eating a regular meal.   Finally, the medical prescription written by Jeffrey Krause, D.D.S. dated February 16, 2010, is a liquid diet order and directs the victim to consume a full liquid diet for the period of six weeks, but makes no mention of nutritional supplements.   Therefore, the Attorney General's Final Decision should be affirmed.

{¶12} Finally, the applicant contended that the letter from Fields merely summarized the doctor's instructions to the victim.   The crux of this case is whether the applicant acted reasonably in incurring expenses for nutritional supplements when there was a lack of communication between housing and dining services.

{¶13} R.C. 2743.51(F)(1) in pertinent part states:

   a.        "(F)(1) 'Allowable expense' means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, rehabilitation, rehabilitative occupational training,

and other remedial treatment and care and including replacement costs for eyeglasses and other corrective lenses."

**{¶14}** The applicant has the burden to prove, by a preponderance of the evidence, that he incurred an allowable expense. See R.C. 2743.52.

**{¶15}** The cost for Ensure is a compensable expense if it is found medically necessary. *In re Casto*, V2002-52016tc (5-13-03). See also *In re O'Rourke*, V2002-51770tc (3-17-03).

**{¶16}** The cost of Ensure is not compensable if no additional cost was incurred above what the applicant would have normally spent on food for the victim. *In re Gilmore*, V2003-40887tc (1-29-04).

**{¶17}** Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

**{¶18}** Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

**{¶19}** From review of the case file and upon full and careful consideration given to the arguments of the parties, we find the applicant has failed to prove, by a preponderance of the evidence, that the nutritional supplements she purchased for her son are a compensable expense pursuant to R.C. 2743.51(F)(1). We believe the best evidence presented is the prescription written by Jeffrey Krause, D.D.S. on February 26, 2010. That prescription only requires that the victim consume a liquid diet, nothing is mentioned concerning the need for nutritional supplements. The letter written by Pamela Fields, administrator at Dr. Krause's office, is not as persuasive as the doctor's prescription since it was not written by the doctor and it was written after this claim had already been appealed to this court. The applicant offered no expert testimony or

witnesses to prove, by a preponderance of the evidence, that nutritional supplements were medically required in this situation. This court has consistently held that normal living expenses are not a compensable loss under the program. Therefore, the January 26, 2011 decision of the Attorney General is affirmed.

{¶20} IT IS THEREFORE ORDERED THAT

{¶21} The January 26, 2011 decision of the Attorney General is AFFIRMED;

{¶22} This claim for reimbursement of the cost of nutritional supplements is DENIED and judgment is rendered for the state of Ohio;

{¶23} This order is entered without prejudice to the applicants' right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{¶24} Costs are assumed by the court of claims victims of crime fund.

 

 

_____
KARL C. KERSCHNER
Presiding Commissioner

 

_____
WILLIAM L. BYERS IV
Commissioner

 

_____
NECOL RUSSELL-WASHINGTON
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2011\August 2011 part II\V2011-60085 Khourie.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:

Filed 8-25-11
Jr. Vol. 2280, Pgs. 47-53
Sent to S.C. Reporter 10-12-12